LORETTA E. LYNCH, Attorney General
VANITA GUPTA, Principal Deputy Assistant Attorney General for Civil Rights
SAMEENA SHINA MAJEED, Chief
JON SEWARD, Deputy Chief
RONALD H. LEE, Trial Attorney (DC SBN 499614)
VARDA HUSSAIN, Trial Attorney (VA SBN 70132)
CHRISTOPHER D. BELEN, Trial Attorney (VA SBN 78281)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW - NWB
Washington, DC  20530
Phone: (202) 514-4713
Facsimile: (202) 514-1116
Ronald.Lee@usdoj.gov
Varda.Hussain@usdoj.gov
Christopher.Belen@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME LOAN AUDITORS, LLC; CENTURY LAW CENTER, LLC; SOE ASSISTANCE CENTER, INC.; SPIEKER LAW OFFICE; OMAR ALCARAZ; ARACELI CASTRO; ORELIA GUTIERREZ; HORTENCIA LEON; RAUL LUNA; ELENA RAMIREZ; AND DAVID SPIEKER,<br><br>Defendants. | Civil No. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The United States of America ("United States") alleges as follows:

COMPLAINT

## NATURE OF THE ACTION

1. This is a civil action brought by the United States to enforce the provisions of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA").

2. This action is brought pursuant to 42 U.S.C. § 3612(o) on behalf of Eberardo Perez, Eva Perez, Jessie Perez, Roberto Hernandez, Margarita Galindo, and minor children DG and CH (together, the "Complainants").  It is also brought pursuant to the United States Attorney General's authority under 42 U.S.C. § 3614(a) and 15 U.S.C. § 1691e(h) to seek redress for a pattern or practice of housing or lending discrimination and for discrimination that raises an issue of general public importance.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 15 U.S.C. § 1691e, 42 U.S.C. § 3614(a), and 28 U.S.C. §§ 1331, 1345.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the United States' claim occurred there.

## THE COMPLAINANTS AND PARTIES

5. Complainant Eberardo Perez ("Perez") is a Hispanic male, place of national origin being Mexico.  At all times relevant to this Complaint, he resided at 3951 Altamont Avenue, Oakland, California 94605, with his wife Eva Perez and daughter Jessie Perez.  Perez owned another property located at 1741 68th Avenue, Oakland, California 94621, which he leased to a third party.

6. Complainant Roberto Hernandez is a Hispanic male, place of national origin being Mexico.  At all times relevant to this Complaint, he resided at 1933 69th Avenue,

COMPLAINT

Oakland, California 94601, with his partner Complainant Margarita Galindo and his minor children Complainants DG and CH.  Hernandez owned another property located at 2631 East 25th Street, Oakland, California 94601, which he leased to a third party.

7.  Defendant The Home Loan Auditors, LLC ("THLA") is a canceled California limited liability company.  THLA was an active limited liability company, authorized to carry out business activities in California, from December 18, 2008 through November 17, 2009.  THLA marketed itself as a home loan audit business.  THLA's principal places of business were 1400 Mitchell Road, Modesto, California 95351 and 1416-B Mitchell Road, Modesto, California 95351.  THLA was registered at 1941 Mitchell Road, Suite F, Ceres, California 95307.

8.  Defendant Century Law Center, LLC ("CLC") is a canceled California limited liability company.  CLC was an active limited liability company, authorized to carry out business activities in California, from June 19, 2009 through November 17, 2009.  CLC held itself out as a mortgage loan modification company in partnership with THLA.  CLC's principal place of business was 1416-B Mitchell Road, Modesto, California 95351.

9.  Defendant SOE Assistance Center, Inc. ("SOE") is a suspended California corporation.  SOE was an active corporation, authorized to carry out business activities in California, beginning on November 10, 2009.  SOE marketed itself as a mortgage loan modification company and as a successor to THLA and CLC.  SOE's principal place of business was 1416-B Mitchell Road, Modesto, California 95351.  SOE was suspended by the California Franchise Tax Board for failure to meet tax requirements.

COMPLAINT

10. Defendant Spieker Law Office ("SLO") is a company located in Modesto, California that purported to provide legal services in connection with obtaining loan modifications for clients of THLA and CLC.

11. Defendant Omar Alcaraz was a part owner of THLA and one of THLA's Vice Presidents of Marketing.  Among other duties, Defendant Alcaraz recruited new sales representatives and carried out direct mail marketing campaigns for THLA.

12. Defendant Araceli Castro was Vice President of Operations and a part owner of THLA. After THLA dissolved, she maintained possession of THLA's client files.  She also had an ownership interest in CLC.  In addition, Defendant Castro was a director, founder, and Chief Executive Officer of SOE.  Defendant Castro's duties for each of these business entities included processing home loan-related documents.

13. Defendant Orelia Gutierrez was employed by THLA as a sales representative and was a part owner of SOE.  Defendant Gutierrez's duties included processing home-loan related documents.

14. Defendant Hortencia Leon was a part owner of THLA and one of THLA's Vice Presidents of Marketing.  Defendant Leon's duties included appearing in a twice-weekly radio show that marketed THLA's services on a Spanish language radio station and appearing in THLA's Spanish language promotional videos.

15. Defendant Raul Luna was the founder of THLA and acted as THLA's Chief Executive Officer and Chief Financial Officer.  Through an arrangement with Defendant Leon, Defendant Luna effectively had majority ownership interest in THLA.  He was also the founder of CLC.  Defendant Luna was the only licensed real estate broker employed by or associated with THLA and CLC.  Among other things, Defendant Luna decided on the

COMPLAINT

form, content, and media of THLA's marketing and publicity.  Defendant Luna also trained THLA staff.

16. Defendant David Spieker is an attorney and the founder of SLO.  He worked in partnership with THLA and as an employee of CLC.  Defendant Spieker's duties at both businesses included communicating with banks and processing home loan-related documents.

17. Defendant Elena Ramirez, sister of Defendant Araceli Castro, was employed by THLA and CLC and was a part owner of SOE.  Defendant Ramirez's duties at all three businesses included processing home loan-related documents.

18. THLA, CLC, and SOE operated as a joint enterprise.  With the exception of Defendant Leon, who had an ownership interest only in THLA, THLA and CLC were owned by Defendants Castro, Alcaraz, and Luna.  THLA and CLC shared office space, employees, bank accounts, and client files.  SOE was formed after the dissolution of THLA and CLC to continue the work that was being done by THLA and CLC.  SOE also operated in the same office space as THLA and CLC.

## FACTUAL ALLEGATIONS

19. The Defendants' business model was to target Hispanic homeowners to pay for home loan audits with the false promise that the results of such audits were necessary to arrange for favorable loan modifications on their behalf.  Defendants knew that loan audits were not necessary to securing loan modifications, yet conditioned loan modifications on payment for loan audits.  Defendants further failed to obtain favorable loan modifications for many of their clients, securing at most temporary relief such as forbearance agreements.

COMPLAINT

20. A loan audit is a review of mortgage documents to determine whether a lender has complied with state and federal mortgage laws.  Loan audits are commonly offered as part of a foreclosure rescue scam to exploit financially strapped homeowners.

21. A loan modification changes one or more loan terms in order to make the loan more affordable for the homeowner, such as reducing the interest rate, changing an adjustable interest rate to a fixed interest rate, extending the term of the loan, eliminating a pre-payment penalty, eliminating a balloon payment, or reducing the principal balance to the present value of the property.  A forbearance agreement is a mechanism for a homeowner to repay delinquent mortgage payments in equal installments, which are in addition to regular monthly mortgage payments.

22. Defendants, individually and through other representatives and agents, targeted Hispanic homeowners to pay for their services by marketing exclusively in Spanish through direct mail, radio advertisements, promotional videos, and live sales presentations.

23. Defendants' marketing encouraged Hispanic homeowners to join the reportedly hundreds of others who had reduced their debt, interest, and monthly payments, and featured purportedly satisfied Hispanic clients stating that Defendants reduced their debts.

24. Defendants created and mailed marketing materials that stated they were helping the "Hispanic community" with loan modifications.

25. Defendants exploited their clients' limited English proficiency.  In contrast to their marketing materials, which were all in Spanish, Defendants required their clients to sign English-language contracts that were often not translated for them.

26. Defendants typically charged clients $3,750 for audit of each mortgage before collecting another $1,250 for services to secure a modification.  Given the limited value of such

COMPLAINT

loan audits, the fees collected by Defendants constituted grossly unfair terms for loan modification services.

27. Defendants' clients sought the loan modifications promised by Defendants in order to secure the financial assistance necessary to either reduce their monthly mortgage payments or maintain their homes and avoid foreclosure.

28. Defendants' clients were qualified for loan modifications without paying for a home loan audit.

29. Defendants knowingly placed their clients' homes at risk of foreclosure by instructing their clients to stop making monthly mortgage payments and to stop communication with their lenders.

30. As a result of Defendants' conduct, many of their clients went into foreclosure and lost their homes.

**Discrimination Against Complainants Eberardo Perez, Eva Perez, and Jessie Perez**

31. At all relevant times, Perez spoke and read only basic words of English.

32. As a result of THLA's marketing to the Hispanic community, Perez visited THLA's offices in or around May 2009 to seek Defendants' assistance with securing modifications to his mortgages for his owner-occupied and rental property, respectively.

33. During this visit, Perez met with THLA sales representatives who told Perez that THLA could reduce his monthly payment and interest rate, and adjust his loans to the current market value on both of his properties.  At this meeting, THLA sales representatives showed Perez a Spanish language testimonial video featuring people stating that THLA helped them.

34. At this initial meeting, Perez signed a number of documents written in English, including client service agreements and documents granting THLA power of attorney regarding the mortgages on both of his properties.  Perez agreed to pay $10,000 for a home loan audit of both mortgages and signed an authorization for THLA to bill his credit card for the first of four monthly installments of $2,500.

35. Defendants instructed Perez to stop making mortgage payments and to stop communication with his loan servicer, GMAC.

36. Perez did not have to pay for a home loan audit to qualify for a loan modification for either his owner-occupied or his rental property.

37. In the summer of 2009, Defendant Spieker informed GMAC that Perez was represented by THLA and instructed GMAC to cease communication with Perez.

38. In or around August 2009, Perez began to express concern to Defendants regarding foreclosure notices, but Defendants ignored his concerns.

39. In or around October 2009, Perez met with Defendant Ramirez.  At this meeting, Perez was required to sign additional documents to transfer his files to CLC.  At Defendant Ramirez's request, Perez signed a document certifying that if he communicated directly with his bank, he would be breaking his contract with CLC, and CLC's services would be terminated.

40. In or around December 2009, Defendant Ramirez informed Perez that forbearance agreements on his two mortgages had been negotiated on his behalf.  These agreements did not modify any of the terms of his mortgages, and did not lower the principal, interest rates, or monthly payments.

COMPLAINT

41. In or around January 2010, Perez received a letter in Spanish from SOE stating that THLA and CLC had closed.  The letter said that SOE was created to assist the Hispanic community, and it offered Perez assistance with his mortgage modifications for an upfront fee of $495, characterized as a "mandatory donation."

42. As a result of Defendants' conduct targeting Perez because of his national origin, both of Perez's properties went into foreclosure.  He was able to save his owner-occupied property, but lost his rental property to foreclosure in March 2010.

### Discrimination Against Complainants Hernandez, Galindo, DG and CH

43. At all relevant times, Hernandez spoke and read only basic words of English.

44. Hernandez visited THLA's offices in or around June 2009 to seek Defendants' assistance with securing modifications to his mortgages for his owner-occupied and rental property, respectively.

45. Hernandez visited THLA in response to a solicitation letter in Spanish created and mailed to him by THLA earlier in 2009.  This letter was an official-looking document that falsely informed him that his lender was under investigation for fraudulent practices, that he had an opportunity to seek a loan modification from THLA, but that it was "extremely important" he contact THLA within 24 hours.

46. During this visit, Perez met with THLA sales representatives who told Hernandez that THLA could reduce his principal, monthly payment, and interest rate on both of his properties.

47. At this initial meeting, Hernandez signed a number of documents written in English, including client service agreements and documents granting THLA power of attorney regarding the mortgages on both of his properties.  Hernandez agreed to pay $10,000 for

a home loan audit of both mortgages and signed an authorization for THLA to bill his

credit card for the first of four monthly installments of $2,500.

48. Defendants instructed Hernandez to stop making mortgage payments and to stop

communication with his lender and/or loan servicer or risk being in breach of contract

with THLA.

49. Hernandez did not have to pay for a home loan audit to qualify for a loan modification

for either his owner-occupied or his rental property.

50. In the summer of 2009, Defendant Spieker informed Hernandez's lender and/or loan

servicer that Hernandez was represented by THLA and instructed Hernandez's lender

and/or loan servicer to cease communication with Hernandez.

51. Between July 2009 and August 2009, Hernandez began to express concerns to

Defendants regarding foreclosure notices he was receiving, but Defendants ignored his

concerns.

52. Between August 2009 and September 2009, Hernandez returned to THLA and was

required to sign additional documents to transfer his files to CLC.  Hernandez also signed

a document certifying that if he communicated directly with his bank, he would be

breaking his contract with CLC, and CLC's services would be terminated.

53. In or around October 2009, Hernandez met with an employee or agent of Defendants,

Leilani Anderson, who telephoned Hernandez's lender or loan servicer in Hernandez's

presence.  All communication during this call was in English.  Subsequently, Hernandez

was told that Defendants had arranged temporary repayment agreements with his lender.

These agreements did not modify any of the terms of his mortgages, and did not lower

the principal, interest rates, or monthly payments.

COMPLAINT

54. Between December 2010 and January 2010, Hernandez received multiple letters in Spanish from SOE stating that THLA and CLC had closed.  The letter said that SOE was created to assist the Hispanic community, and it offered Hernandez assistance with his mortgage modifications for an upfront fee of $495, characterized as a "minimum donation."

55. As a result of Defendants' conduct targeting Hernandez because of his national origin, both of Hernandez's properties went into foreclosure.  He was able to save his owner-occupied property, but lost his rental property to foreclosure in September 2010.

### Discrimination Against Other Hispanic Homeowners

56. From 2009-2010, Defendants exclusively targeted Hispanic homeowners across the counties surrounding the San Francisco Bay Area to pay for home loan audits and loan modifications.

57. A substantial number of homeowners, including Complainants, reside within the Northern District of California.

58. A few homeowners have successfully recovered some of the fees paid to Defendants through actions in Napa County Superior Court.

59. Defendants treated these homeowners in substantially the same manner as they did Complainants, inducing them to pay for home loan audits with the false promise that the Corporate Defendants would use the results of the audit to secure favorable loan modifications on their behalf, instructing them to stop their mortgage payments, interfering with their ability to communicate with their lender regarding their impending foreclosures, and securing at most forbearance agreements that did not modify their loans.

COMPLAINT

## HUD COMPLAINTS AND CHARGE OF DISCRIMINATION

60. Pursuant to 42 U.S.C. § 3610(a), Perez and Hernandez filed timely complaints of discrimination on the basis of national origin against the Defendants with HUD.

61. Pursuant to 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of Perez and Hernandez's complaint, attempted conciliation without success, and prepared a final investigative report.

62. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendants engaged in illegal discriminatory housing practices against Perez and Hernandez.

63. Therefore, on January 7, 2016, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), against Defendants on behalf of Perez and Hernandez.

## ELECTION OF THE HUD CHARGE OF DISCRIMINATION
## TO FEDERAL DISTRICT COURT

64. On January 21, 2016, Perez and Hernandez elected to have the claims asserted in the Charge of Discrimination resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

65. On January 21, 2016, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on the Charge of Discrimination.

66. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).

67. On February 22, 2016, the parties executed a tolling agreement extending the filing deadline of this case to May 23, 2016.

COMPLAINT

68. On May 19, 2016, the parties executed a second tolling agreement extending the filing deadline of this case to August 23, 2016.

## COUNT I

69. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 68 above.

70. Complainants' properties are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

71. By the actions and statements referred to in the foregoing paragraphs, Defendants have:

   a. Refused to sell or rent, refused to negotiate for the sale or rental, or otherwise made unavailable, a dwelling because of national origin, in violation of 42 U.S.C. § 3604(a);

   b. Discriminated in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection therewith, because of national origin, in violation of 42 U.S.C. § 3604(b);

   c. Discriminated in the making or terms or conditions of residential real estate-related transactions, because of national origin, in violation of 42 U.S.C. § 3605; and

   c. Coerced, intimidated, threatened or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under the Fair Housing Act, in violation of 42 U.S.C. § 3617.

72. Complainants are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and suffered injuries as a result of Defendants' discriminatory conduct.

73. Defendants' actions described in the preceding paragraphs were intentional, willful, and taken in disregard for the rights of Complainants Perez, Hernandez, Galindo, and minor children DG and CH.

COMPLAINT

## COUNT II

74. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 73 above.

75. By the actions and statements referred to in the foregoing paragraphs, Defendants' conduct described above constitutes:

a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3604(a) and (b), 3605 and 3617, in violation of 42 U.S.C. § 3614(a); and

b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3604(a) and (b), 3605 and 3617, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

76. In addition to Complainants, there may be other victims of Defendants' discriminatory actions and practices who are "aggrieved persons" as defined in 42 U.S.C. § 3602(i).

77. These persons may have suffered actual injury and damages as a result of Defendants' discriminatory conduct.

78. Defendants' actions were intentional, willful, and taken in disregard for the rights of others.

## COUNT III

79. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1 through 78 above.

80. Defendants are creditors within the meaning of 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l).

COMPLAINT

81. By the actions and statements referred to in the foregoing paragraphs, Defendants' conduct described above constitutes a pattern or practice of discrimination against applicants with respect to credit transactions on the basis of national origin in violation of the ECOA, 15 U.S.C. § 1691(a)(1).

82. In addition to Complainants, there may be other victims of Defendants' discriminatory actions and practices who are "aggrieved persons" as defined in 15 U.S.C. § 1691e.

83. These persons may have suffered actual injury and damages as a result of Defendants' discriminatory conduct.

84. Defendants' actions were intentional, willful, and taken in disregard for the rights of others.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an ORDER that:

1. Declares that Defendants' conduct as set forth above violates the Fair Housing Act and the Equal Credit Opportunity Act;

2. Enjoins Defendants and their agents, employees, and successors, and all other persons in active concert or participation with them, from:

   a.  Discriminating on the basis of national origin in violation of the Fair Housing Act and the Equal Credit Opportunity Act;

   b.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct; and

COMPLAINT

c.   Failing or refusing to take such affirmative steps as may be necessary to prevent recurrence of any discriminatory conduct in the future, and to eliminate, to the extent practicable, the effects of their unlawful practices; and

3.   Awards monetary damages to Complainants and to all other persons harmed by the Defendants' discriminatory practices, pursuant to 42 U.S.C. §§ 3612(o)(3), 3614(d)(1)(B), and 15 U.S.C. § 1691e(h).

The United States further prays for such additional relief as the interests of justice may require.

## **JURY DEMAND**

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

COMPLAINT

Dated:  August 23, 2016

LORETTA E. LYNCH
Attorney General

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

/s/ Ronald H. Lee
JON SEWARD
Deputy Chief
RONALD H. LEE
VARDA HUSSAIN
CHRISTOPHER D. BELEN
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Northwestern Building, 7th Floor
Washington, DC  20530
Phone: (202) 616-1892
Facsimile: (202) 514-1116
Ronald.Lee@usdoj.gov
Varda.Hussain@usdoj.gov
Christopher.Belen@usdoj.gov
