| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| EBERARDO PEREZ, et al., | ) | |
| | ) | |
| Intervenor Plantiffs, | ) | |
| | ) | Case No. 3:16-cv-04839-RS |
| vs. | ) | |
| | ) | **STIPULATED ORDER OF DISMISSAL** |
| THE HOME LOAN AUDITORS, LLC, et al., | ) | **OF CLAIMS BETWEEN** |
| | ) | **THE UNITED STATES AND** |
| Defendants. | ) | **HORTENCIA LEON** |

In accordance with Civil L.R. 7-1 and 7-12, the United States and Defendant Hortencia

Leon ("the parties"), through counsel, request that the Court enter the proposed stipulated order

below, dismissing the parties' claims against each other with prejudice. On August 21, 2018, the

parties executed a settlement agreement, resolving the claims between them (see Exhibit A,

attached hereto). Through that settlement agreement, the parties voluntarily resolved the claims

between them, agreeing that it is to their mutual benefit to terminate the litigation of this case.

The parties stipulate that all claims between them in the above-captioned matter should be

dismissed with prejudice, subject to the procedures for resolving disputes between the parties

that are set forth in the settlement agreement. The parties further agree that both parties shall

bear their own attorneys' fees and costs in connection with this case.

//

//

Dated: September 5, 2018

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

  /s/ Christopher D. Belen
R. TAMAR HAGLER, Deputy Chief (CA 189441)
CHRISTOPHER D. BELEN (VA 78281)
ABIGAIL MARSHAK (NY Reg. No. 5350053)
JUNIS BALDON (KY 93045)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW - NWB
Washington, DC  20530
Phone: (202) 353-1339
Facsimile: (202) 514-1116
Christopher.Belen@usdoj.gov
*Attorneys for the United States of America*

  /s/ Ameet S. Birring
JAKRUN S. SODHI, SBN: 200851
AMEET S. BIRRING, SBN: 297118
1301 K Street, Suite F
Modesto, CA 95354
Telephone: (209) 900-8200
Facsimile: (209) 900-8205
Jak@sodhilawgroup.com
Ameet@sodhilawgroup.com
*Attorneys for Defendant Hortencia Leon*

PURSUANT TO JOINT MOTION:

The United States and Defendant Hortencia Leon, having informed the Court of their settlement agreement, the United States' claims against Defendant Hortencia Leon in this case, and Defendant Leon's claims against the United States in this case, are dismissed with prejudice, with each party to bear its own attorneys' fees and costs.

IT IS SO ORDERED.

Dated: 9/6/18

Honorable Richard Seeborg
UNITED STATES DISTRICT JUDGE

ELECTRONIC SIGNATURE ATTESTATION

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

                           /s/ Christopher D. Belen
                           CHRISTOPHER D. BELEN

CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2018, I served the foregoing Stipulation of Dismissal by filing the same via the Court's CM/ECF system, which will deliver notification to the following:

David M. Spieker      davidspieker3104@yahoo.com
(*Pro se* Defendant and Counterclaimant)

Armando Silvestre Mendez   amendezlaw@aol.com
(Counsel for Defendant Orelia Gutierrez)

Joseph E. Jaramillo    jjaramillo@heraca.org
Gina C. Di Giusto     gdigiusto@heraca.org
(Counsel for Intervenor Plaintiffs Housing and Economic Rights Advocates, et al.)

James Quadra       jquadra@quadracoll.com
Rebecca Coll        rcoll@quadracoll.com
(Counsel for Defendants Raul Luna and Omar Alcaraz)

Jakrun Sodhi        jak@sodhilawgroup.com
(Counsel for Defendant Hortencia Leon)

                           /s/ Christopher D. Belen
                           CHRISTOPHER D. BELEN

## SETTLEMENT AGREEMENT
## BETWEEN THE UNITED STATES OF AMERICA
## AND HORTENCIA LEON, PARTIALLY
## RESOLVING *UNITED STATES v. THE HOME LOAN AUDITORS, ET AL.*,
## Case No. 3:16-cv-04839 (N.D. Cal.)

### I.    INTRODUCTION

1. This Settlement Agreement is made and entered into by and between the United States of America, through the U.S. Department of Justice ("United States"), and Hortencia Leon ("Leon") (collectively, "the Parties"), through their authorized representatives. This Agreement resolves all the claims and counterclaims between Leon and the United States in the civil action filed in the United States District Court for the Northern District of California, captioned *United States v. The Home Loan Auditors, et al.*, No. 3:16-cv-04839-RS (N.D. Cal.) ("Civil Action"). This Agreement does not resolve claims brought by the United States against other Defendants in the Civil Action, nor does this Agreement resolve claims brought by the Intervenor-Plaintiffs in the Civil Action.

### II.    RECITALS

2. This Agreement arises out of a Complaint filed by the United States on August 23, 2016, and amended on May 9, 2017, to enforce the Fair Housing Act, 42 U.S.C. §§ 3601-3631 ("FHA"). The Complaint was brought pursuant to 42 U.S.C. § 3612(o) on behalf of Eberardo Perez, Eva Perez, Jessie Perez, Roberto Hernandez, Margarita Galindo, and minor children DG and CH (together, "HUD Complainants"), and pursuant to the United States Attorney General's authority under 42 U.S.C. § 3614(a) to seek redress for a pattern or practice of housing and lending discrimination and for discrimination that raises an issue of general public importance against The Home Loan Auditors, LLC ("THLA"), Century Law Center, LLC ("CLC"), SOE Assistance Center, Inc. ("SOE"), and Spieker Law Office, and their respective principals Omar Alcaraz, Araceli Castro, Orelia Gutierrez, Hortencia Leon, Raul Luna, Elena Ramirez, and David Spieker (all together, "Defendants"). On November 30, 2016, HUD Complainants and Housing and Economic Rights Advocates ("HERA"), HUD Complainants' counsel and a self-described "legal service and advocacy organization," intervened.

3. The United States' Complaint, as amended, alleges that from at least 2009 through at least 2010, Defendants deliberately targeted persons of Hispanic national origin, including HUD Complainants and other persons, for grossly unfair real estate-related transactions related to mortgage loan modifications because of their Hispanic national origin and limited English proficiency. The Complaint alleges that Defendants did this by inducing homeowners to purchase "forensic home loan audits" for the purpose of securing modifications of their mortgage loans and/or preventing foreclosure of their homes when such audits were not necessary or otherwise of any value.

4. The United States' Complaint, as amended, alleges that by their actions, policies, and practices, Defendants made housing unavailable because of national origin, in violation of 42 U.S.C. § 3604(a); discriminated in the terms, conditions, or privileges of sale or rental of a

1


EXHIBIT
A

dwelling, or in the provision of services of facilities in connection therewith, because of national origin, in violation of 42 U.S.C. § 3604(b); discriminated in the making or terms or conditions of residential real estate-related transactions, because of national origin, in violation of 42 U.S.C. § 3605; and coerced, intimidated, threatened or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under the Fair Housing Act, in violation of 42 U.S.C. § 3617.

5. The United States' Complaint, as amended, alleges that Defendants' conduct constitutes a pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, or a denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, which raises an issue of general public importance. It further alleges that such conduct injured HUD Complainants and other aggrieved persons, as defined in the FHA, 42 U.S.C. § 3602(i), and that Defendants' actions were intentional, willful, and taken in disregard for the rights of others.

6. Leon represents, by her signature below, that she is no longer involved in mortgage loan modification businesses and does not intend to reenter such businesses for the duration of this Agreement.

7. Leon additionally represents that she is no longer engaged in activities related to housing, including engaging in residential real estate-related transactions.[1]

8. The HUD Complainants and HERA have entered into a separate agreement resolving their claims against Leon ("Private Settlement Agreement").

## III.   STATEMENT OF CONSIDERATION

9. The Parties agree that the United States' claims against Leon should be resolved without further proceedings or a trial. The United States and Leon therefore agree to entry of this Agreement. This Agreement constitutes full resolution of the United States' claims in its Complaint against Leon.

10. During the pendency of any aspect of the Civil Action as against any party, Leon shall preserve and provide to the United States non-privileged information relevant to the claims and defenses in the Civil Action. Subject to law and the Federal Rules of Civil Procedure and Evidence, this includes, but is not limited to, accepting service of and complying with lawful subpoenas for information and testimony, including at deposition, hearings, and at trial.

11. In consideration of, and consistent with, the terms of this Agreement, the United States agrees to move jointly with Leon for dismissal of the Civil Action as against Leon only, attaching this Agreement thereto. The Parties agree and acknowledge that this consideration is adequate and sufficient. The Parties agree and acknowledge that the provisions of this

---

[1] Any reference in this Agreement to "activities related to housing" means those activities subject to the provisions of the Fair Housing Act, as amended, which includes those activities that involve "residential real estate-related transactions" as defined in 42 U.S.C. § 3605.

Agreement are conditioned on the representations made in Paragraphs 6-7 above and the additional representations discussed in Paragraph 18 below.

THEREFORE, the Parties, through their authorized representatives, hereby stipulate and agree as follows:

## IV. GENERAL NONDISCRIMINATION PROVISIONS

12. Leon, her employees, agents, successors and assigns, and all other persons or entities in active concert of participation with Leon shall not:

    a. Refuse to sell or rent, refuse to negotiate for the sale or rental, or otherwise make unavailable, a dwelling because of national origin;

    b. Discriminate in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection therewith, because of national origin;

    c. Discriminate in the making or terms or conditions of residential real estate-related transactions, because of national origin; or

    d. Coerce, intimidate, threaten or interfere with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of, any rights granted or protected under the Fair Housing Act.

## V. CONDITIONS ON PARTICIPATION IN ACTIVITIES RELATED TO RESIDENTIAL REAL ESTATE

13. Leon represents that she is no longer involved in activities related to housing. In the event that Leon becomes involved in activities related to housing during the duration of this Agreement, she shall notify the United States. The notification shall be provided within seven (7) days of when Leon becomes involved in such activities. Within forty-five (45) days of becoming involved in activities related to housing, Leon shall attend an in-person training on nondiscrimination laws, including the Fair Housing Act, and with emphasis on discrimination in real estate related transactions. The training shall be conducted in accordance with the following:

    a. The trainer or training entity shall be independent of Leon, qualified to conduct such training, and approved in advance by the United States;

    b. Leon shall submit to the United States the name and contact information of the person or organization proposed to provide the training no fewer than fourteen (14) days before the training date;

c. Within fourteen (14) days after the training, Leon shall provide to the United States a signed statement confirming her attendance that includes the date of the training, the name of the instructor, and the length of the course; and

d. Any expenses associated with this training shall be borne by Leon.

14. In addition to the requirements in Paragraph 13, if Leon is or becomes a manager, principal, or owner in a business or organization whose activity relates to housing during the duration of this Agreement, she shall do the following:

a. Design policies to prevent and detect potential Fair Housing Act violations, and provide to the United States the details of those policies. If Leon is a manager, principal, or owner in activities related to housing on the effective date of this Agreement, she must submit the polices to counsel for the United States within forty-five (45) days of the effective date of this Agreement. If Leon is not a manager, principal, or owner in activities related to housing on the effective date of this Agreement but takes on such a role or position thereafter, she must submit the policies within forty-five (45) days after taking on such a role or position. The United States shall have thirty (30) days to review and agree or object to the proposed policies. The parties shall utilize the dispute resolution procedures set forth in Paragraph 28 to resolve any objections by the United States. Within one (1) week of being approved by the United States, the policies shall be implemented and distributed to all employees, agents, co-managers, co-principals, and co-owners involved in the activity related to housing.

b. Provide training for all employees, agents, co-managers, and co-owners/principals on the Fair Housing Act, including on its national origin discrimination provisions. If Leon is a manager, principal, or owner in activities related to housing on the effective date of this Agreement, the training must occur within forty-five (45) days of the effective date. If Leon is not a manager, principal, or owner in activities related to housing on the effective date of this Agreement but takes on such a role or position thereafter, the training must occur within forty-five (45) days after taking on such a role or position. The trainer or training entity shall be independent of Leon, qualified to conduct such training, and approved in advance by the United States. Leon shall submit to the United States the name and contact information of the person or organization proposed to provide the training no fewer than fourteen (14) days before the training date. Within fourteen (14) days after the training, Leon shall provide to the United States signed statements from all attendees confirming attendance that includes the date of the training, the name of the instructor, and the length of the course. Any expenses associated with this training shall be borne by Leon.

c. Make available Spanish-language translations of all documents provided to any current or prospective clients in the activity related to housing. If Leon is a manager, principal, or owner in activities related to housing on the effective date of this Agreement, she must begin making available Spanish-language

translations within forty-five (45) days after the effective date of this Agreement. If Leon is not a manager, principal, or owner in activities related to housing on the effective date of this Agreement but takes on such a role or position thereafter, she must begin making available Spanish-language translations within forty-five (45) days after taking on such a role or position. For any new document created for client or prospective client use during the duration of this Agreement, Leon shall make available Spanish-language versions concurrently with English versions.

## VI.    BIANNUAL REPORTING

15. Leon shall report every six (6) months, beginning six (6) months from the effective date of this Agreement, with the final report provided to the United States sixty (60) days prior to the expiration of this Agreement, detailed descriptions of the following to the United States:

   a.  Business interests she held, and/or business activities or employment she engaged in, at any point in time during the six-month reporting period, including identifying whether any of these interests, activities, or employment are in businesses that primarily serve a population that is limited English proficient, defined as individuals who do not speak English as their primary language and who have a limited ability to read, speak, write, or understand English ("LEP"); and

   b.  Complaints of discrimination, misrepresentation, or fraud made about Leon or the business(es) she was engaged in, whether such complaints were formal or informal, written or otherwise. If written in any form or medium, Leon must submit legible copies of the complaint with the report required by this Paragraph.

16. If Leon is or becomes the manager, principal, or owner in an activity related to housing under Paragraph 14, she shall provide the following to the United States along with the bi-annual report described in Paragraph 15:

   a.  English and Spanish language versions of client and prospective client documents translated under Paragraph 14(c); and

   b.  Confirmation that the antidiscrimination policies under Paragraph 14(a) have been distributed to all employees, agents, co-managers, and co-owners, including any new employees, agents, co-managers, and co-owners hired in the preceding year.

## VII. SUSPENDED AGREEMENT TO ENTRY OF JUDGMENT OF RESTITUTION FOR AGGRIEVED PERSONS OTHER THAN HUD COMPLAINANTS

17. Leon has provided information about her financial situation to counsel for the United States in this case, as described in her Financial Statement of a Debtor, signed May 27, 2016 ("Disclosure"), and reaffirmed in writing by her counsel before signing this Agreement. The United States has relied on the accuracy and completeness of the information described in her Disclosure in entering into this Agreement and particularly with respect to suspending entry of Judgment as set forth in Paragraph 18 and the payment of restitution as set forth in Paragraph 22. Leon warrants that the financial information she provided is thorough, accurate, and complete. Leon warrants that she does not own or have an interest in any asset(s) that has not been disclosed to counsel for the United States in this case. Leon warrants that she has made no misrepresentations on, or in connection with, the financial information provided to counsel for the United States in this case.

18. If, before the expiration of this Agreement five (5) years after the effective date, the United States learns of

   a. asset(s) in which Leon had an interest at the time the Parties execute this Agreement that would change her estimated net worth by $5,000 or more and that was not disclosed to counsel for the United States in this case, or

   b. a misrepresentation by Leon on, or in connection with, the financial information provided to counsel for the United States in this case that would change her estimated net worth by $5,000 or more,

the United States may (i) move to reinstate its claims or initiate a separate civil action against Leon in accordance with Paragraph 29, and/or (ii) seek entry of Judgment against her and in favor of the United States for restitution to persons aggrieved by Defendants' conduct (other than the HUD Complainants) in the amount of **$23,040.02**.

19. If the United States seeks entry of Judgment pursuant to the provisions and requirements of Paragraph 18, Leon agrees to entry of such Judgment against her. Leon also agrees not to contest any enforcement or collection action undertaken by the United States pursuant to Paragraph 18 and not to contest any efforts by the United States, including discovery as allowed by the Federal Rules of Civil Procedure or by law, to identify and locate assets not identified clearly in the financial information provided to counsel for the United States in this case prior to the effective date of this Agreement.

20. Except as provided in Paragraph 18, and in reliance on Leon's representations to counsel for the United States regarding her financial condition, the United States will not seek entry of Judgments in the amounts set forth in Paragraph 18, nor will the United States enforce or collect those amounts against Leon.

6

21. In the event that money is collected pursuant to Paragraph 18, it shall be used only to restore Defendants' clients to the position they formerly occupied through the return of fees they paid to Defendants to secure forensic loan audit and mortgage modification services. The amount a recipient may receive under this Paragraph shall not exceed the amount he/she paid to THLA, CLC, SOE, and/or Spieker Law Office for services related to home loan audits and/or home loan modifications, less any fees previously refunded to that recipient. Leon agrees not to contest the selection of recipients or the amount(s) of restitution paid to each recipient, which the United States shall determine in its discretion and in accordance with the parameters in this Paragraph.

## VIII.  RESTITUTION FOR AGGRIEVED PERSONS OTHER THAN HUD COMPLAINANTS

22. Within one (1) year of the effective date of this Agreement, Leon shall pay a total of **$3,000** as restitution into the Restitution Fund to be established by Defendant David Spieker ("Defendant Spieker"). Leon shall make monthly payments of not less than $250 each, beginning thirty (30) days after the effective date of this Agreement, unless and until she pays the full $3,000 before the end of the one (1) year. No later than twenty-one (21) days after the effective date of this Agreement, counsel for the United States shall provide Leon with written instructions for how to make the payment. The funds paid by Leon shall be used only to restore Defendants' clients to the position they formerly occupied through the return of fees they paid to Defendants to secure forensic loan audit and mortgage modification services. Leon shall provide written verification to the United States of the deposit within three (3) business days of depositing the funds described in this Paragraph. Any interest accrued shall be distributed to recipients identified by the United States under Paragraph 23.

23. The United States shall determine recipients entitled to receive distributions from the Restitution Fund. The United States shall also determine the amount that each recipient will receive under the Restitution Fund. The United States shall produce a list of the recipients and amount each recipient shall receive from the Restitution Fund ("Recipient List"). The Recipient List shall be subject to the following conditions:

    a.  A recipient must have paid money to THLA, CLC, SOE, and/or Spieker Law Office in exchange for promised home loan audit and/or home loan modification services;

    b.  The amount a recipient may receive from the Restitution Fund shall not exceed the amount paid by the recipient to THLA, CLC, SOE, and/or Spieker Law Office for services related to home loan audits and/or home loan modifications, less any money previously refunded to that recipient; and

    c.  In order to be eligible to receive restitution under this Agreement, recipients must complete the Declaration and Release attached to this Agreement as Attachment A.

24. Leon agrees that the determinations of the United States made pursuant to Paragraph 23 shall be final, and Leon hereby waives the right to contest the United States' determination in this or any other proceedings.

25. A separate settlement agreement executed with Defendant Spieker on August 2, 2018 ("the Spieker Agreement") requires the United States and Defendant Spieker to take the following actions related to the Restitution Fund:

a. The United States shall deliver the Recipient List to Defendant Spieker. Within fourteen (14) days of receiving the Recipient List, Defendant Spieker shall deliver to counsel for the United States restitution checks payable to each person on the Recipient List in the amount specified by the United States. Those checks must be valid for no less than 180 days.

b. When counsel for the United States has received a check from Defendant Spieker payable to a recipient and a signed Declaration and Release from the recipient, counsel for the United States shall promptly deliver the check to the recipient and copies of the signed Declaration and Release to Spieker. No recipient shall be paid until he or she has signed and delivered to counsel for the United States the Declaration and Release in Attachment A. Should any aggrieved person refuse to execute the release attached to this Agreement as Attachment A, his or her share of the Restitution Fund will be distributed, in the United States' discretion, among the recipients who execute releases subject to the conditions in Paragraph 23.

c. The United States may take reasonable steps to facilitate the deposit of funds to recipients on the Recipient List, including by redelivering checks returned to the United States as undeliverable.

d. If requested by the United States, Defendant Spieker will take the necessary steps to re-issue checks. Defendant Spieker also agrees to provide promptly information to counsel for the United States about the Restitution Fund, including, but not limited to, the Restitution Fund's available balance, checks that have or have not been cashed/deposited, and administrative fees incurred.

e. Should any individuals identified on the Recipient List fail to deposit their checks within 180 days, or if any funds remain in the Restitution Fund for any other reason sixty (60) days prior to the expiration of this Agreement, the United States may, in its sole discretion, allocate those remaining funds among those on the original Recipient List or take any other measures to distribute the Restitution Funds to remedy the alleged harm in a manner consistent with the Spieker Agreement. In no event shall the total amount received by any individual exceed the amount of restitution to which he or she is entitled, consistent with Paragraph 23. Spieker agrees to issue additional checks consistent with this paragraph.

## IX.    MONETARY DAMAGES FOR HUD COMPLAINANTS

26. Leon shall pay the HUD Complainants the amounts agreed upon in their Private Settlement Agreement(s), if required by that Agreement(s).

## X.    IMPLEMENTATION AND ENFORCEMENT

27. The United States may monitor compliance with this Agreement at any time, including, but not limited to, by conducting tests at any offices or locations at which Leon conducts activities related to housing. Leon agrees to cooperate with the United States in any review of compliance with this Agreement. Upon reasonable notice, Leon shall permit counsel for the United States to inspect and copy all non-privileged records pertinent to this Agreement.

28. The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of or compliance with this Agreement prior to initiating court action. If the United States believes that Leon has failed to perform in a timely manner any act required by this Agreement, or has otherwise not acted in conformance with any provision thereof, whether intentionally or not, the United States shall notify Leon in writing of its concerns. Leon shall have fifteen (15) days from the date of the United States' notification to cure the breach.

29. If the United States and Leon are unable to reach a resolution within fifteen (15) days as contemplated in Paragraph 28, the Parties agree that the United States may move to reinstate its claims against Leon or may file a separate lawsuit for breach of this Agreement, or any provision thereof, in the United States District Court for the Northern District of California. In any such action, Leon consents to personal jurisdiction over them by this Court, and agree to waive all affirmative defenses, including the statute of limitations in the Civil Action. Leon further acknowledges that venue in this Court is appropriate and agrees not to raise any challenge on this basis.

30. In the event the United States seeks to enforce or collect on a Judgment as allowed by Paragraphs 18-20 and/or reinstates its claims or files a new civil action as contemplated by Paragraph 29 to remedy a breach of this Agreement, the United States may seek, and the Court may grant as relief, the following: 1) an order mandating specific performance of any term or provision in this Agreement, without regard to whether monetary relief would be adequate; 2) an award of reasonable attorneys' fees and costs incurred in bringing an action to remedy breach of this Agreement; and 3) any additional relief that may be authorized by law or equity. If the claims are reinstated and/or if a new civil action is filed, Leon expressly agrees not to count the time during which this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of claim preclusion, issue preclusion, statute of limitations, estoppel, laches, or similar defenses.

31. Failure by any party to enforce any provision of this Agreement shall not operate as a waiver of the United States' right or ability to enforce any other provision of this Agreement.

32. Within thirty (30) days of the effective date of this Agreement, the United States and the Leon shall jointly move the Court for dismissal with prejudice of the United States' claims

9

against Leon in the Civil Action subject to Paragraphs 18-21 and/or reinstatement as set forth in Paragraph 29 above. The Parties shall attach a copy of this Agreement to the joint motion(s).

## XI.    TERMINATION OF LITIGATION HOLD

33. The Parties agree that, as of the effective date of this Agreement, litigation is not "reasonably anticipated" between the United States and Leon concerning the matters described in this Agreement. To the extent that any Party has previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, that Party is no longer required to maintain such litigation hold. Nothing in this Paragraph relieves any Party of any other obligations under this Agreement, including Paragraph 10 above, or other obligations to preserve information.

## XII.   DURATION, EXECUTION AND OTHER TERMS

34. The effective date of this Agreement is the date of the last signature, below. The Agreement may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

35. The provisions of this Agreement shall remain in effect for five (5) years after the effective date.

36. Except as stated in Paragraph 30, each Party shall bear its own legal or other costs incurred in connection with this matter, including the preparation, negotiation and performance of this Agreement.

37. This Agreement constitutes the complete agreement among the Parties. No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

38. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion. The Parties agree that each Party and its representatives have acted consistent with the duty of good faith and fair dealing.

39. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

40. The provisions of this Agreement shall apply to Leon and her officers, employees, agents, successors and assigns, and all other persons or entities in active concert or participation with her.

41. This Agreement is governed by and shall be interpreted under the laws of the United States. For purposes of construing or interpreting this Agreement, it shall be deemed to have

been drafted by all Parties and shall not be construed or interpreted against any Party for that reason in any subsequent dispute.

42. Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another Party, the performance of one Party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another Party.

43. This Agreement is a public document. The Parties agree and consent to the United States' disclosure of this Agreement and information concerning this Agreement to the public.

44. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

45. This Agreement may be modified only with the written consent of the Parties. Any modification must be in writing and signed by the Parties through their authorized representatives.

46. Execution of this Agreement shall not constitute an admission of liability by any party.


[signatures appear on next page]


//


//


//


11

Dated: 8-15-18

HORTENCIA LEON
*Defendant*


Dated: 8-15-8

JAKRUN S. SODHI, SBN: 200851
AMEET S. BIRRING, SBN: 297118
1301 K Street, Suite F
Modesto, CA 95354
Telephone: (209) 900-8200
Facsimile: (209) 900-8205
Jak@sodhilawgroup.com
Ameet@sodhilawgroup.com
*Attorney for Defendant Hortencia Leon*


Dated: 8/21/18

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

R. TAMAR HAGLER, Deputy Chief (CA 189441)
CHRISTOPHER D. BELEN (VA 78281)
ABIGAIL MARSHAK (NY Reg. No. 5350053)
JUNIS BALDON (KY 93045)
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW - NWB
Washington, DC 20530
Phone: (202) 353-1339
Facsimile: (202) 514-1116
Christopher.Belen@usdoj.gov
Abigail.Marshak@usdoj.gov
Junis.Baldon@usdoj.gov
*Attorneys for the United States of America*

12

## ATTACHMENT A

## DECLARATION AND RELEASE

I, _____, declare and state as follows:

1.  I paid $_____ to The Home Loan Auditors, LLC ("THLA"), Century Law Center, LLC ("CLC"), SOE Assistance Center, Inc. ("SOE"), Spieker Law Office, Omar Alcaraz, Araceli Castro, Orelia Gutierrez, Hortencia Leon, Raul Luna, Elena Ramirez, and/or David Spieker (collectively, "Defendants") in exchange for promised home loan audit and/or home loan modification services at the following address:

_____

_____

2.  To date, I have received or recovered $ _____ of the money I paid to Defendants.

3.  In consideration for the parties' agreement to the terms of the Settlement Agreement resolving the United States' allegations in *United States v. The Home Loan Auditors, et al*, Case No. 3:16-cv-04839-RS (N.D. Cal.), that Hortencia, Leon, David Spieker, and Spieker Law Office violated the Fair Housing Act, and partial restitution to me from the Restitution Fund created as part of the Settlement Agreement, I, _____, hereby release and forever discharge all claims, arising prior to the date of this Release, related to the facts at issue in the litigation referenced above and related to the alleged violation of the Fair Housing Act, that I may have against Hortencia Leon, David Spieker, and Spieker Law Office and all related entities and persons.

I confirm that the foregoing is true and correct.

Executed on this date: _____, 20_____.

SIGNATURE: _____

PRINT NAME: _____

ADDRESS: _____

_____